Mindy Kallus (MK 0960)
The Law Office of Steven A. Morelli, P.C.
990 Stewart Avenue, Suite 130
Garden City, New York 11530
(516) 393-9151

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
RIMMA KUNIK,

                   Plaintiff,

      -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, PRINCIPAL KAYE HOULIHAN,
and ASSISTANT PRINCIPAL DORISH MUNOZ
FUENTES,

               Defendants.
-----------------------------------------------------------------X

Dkt. No.:

**VERIFIED
COMPLAINT**

*Jury Trial Demanded*

Plaintiff RIMMA KUNIK, by and through her attorneys, THE LAW OFFICE OF

STEVEN A. MORELLI, P.C., respectfully alleges, upon knowledge as to herself and her own

actions, and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff, Rimma Kunik, is a 69 year old Jewish female residing in Queens, New York.

   She is a native of what was referred to as the Union of Soviet Socialist Republics

   ("USSR") at the time of her birth and is now known as Russia. She is a naturalized

   United States citizen who came to the United States in 1992.

2. Plaintiff has dedicated her entire professional life to educating children and adults. She

   first worked for the New York City Department of Education in 1994 at Fort Hamilton

   High School in Brooklyn. She became tenured after her first year of employment. She is

1

certified to teach English as a Second Language and has a master's degree in education from Adelphi University.

3. Ms. Kunik taught in Brooklyn, New York until her constructive discharge in the fall of 2014, despite her exemplary job performance which included positive ratings until the acts complained of.

4. Beginning in the 2012-2013 school year, Defendants initiated a campaign of harassment and discrimination based upon Plaintiff's age and religion.

5. Beginning in the 2012-2013 school year, Principal Kaye Houlihan was Plaintiff's principal and Assistant Principal Dorish Munoz Fuentes was her assistant principal in the Department of Foreign Languages and English as a Second Language ("ESL"). Houlihan and Fuentes spearheaded a campaign against Plaintiff on the grounds of age discrimination and religious discrimination in order to cause her to leave her employment.

6. As more fully set forth below: in (1) treating Plaintiff differently than her similarly situated non-Jewish and/or younger co-workers; (2) subjecting Plaintiff to heightened scrutiny on the basis of her age and her religion; (3) subjecting Plaintiff to a hostile work environment on the basis of her age and her religion; (4) subjecting Plaintiff on the basis of her age and her religion to unfair and disproportionate disciplinary actions —an Unsatisfactory rating and a Developing rating; (5) reassigning Plaintiff to a classroom too far to get to in a timely fashion between periods;(6)refusing to hear or respond to Plaintiff's legitimate explanations in her effort to resolve the conflict created by the administration;(7) confusing and belittlingPlaintiff in the presence of colleagues and students; (8) changing Plaintiff's ratings for Observation #3 in 2014, which was found

inappropriate by a Special NYS committee, to a lower overall rating, by removing all the "efficient ratings" and placing N/A, standing for "no information available" in their place, or refusing to accept her "artifacts" (responses to observations) for 6 months until it was no longer possible to change her final rating based on the information contained in the artifacts, which defeats the purpose of the artifacts as part of the evaluation system for 2013-2014 school year; (9) hiding from Plaintiff important information about submitting "artifacts"; (10)using incorrect information generated in Plaintiff's account on the website "Skedula" while Plaintiff was on sick leave, and refusing to correct the rating, investigate and rectify the situation, and failing to assist Plaintiff in establishing that the wrong information was not created by Plaintiff and could not be used for her evaluation, thereby preventing Plaintiff from getting a higher rating for the 2013-2014 school year.

7. Defendants discriminated against Plaintiff and retaliated against Plaintiff on the basis of her age and her religion in violation of Plaintiff's rights under the Equal Protection Clause of the First and Fourteenth Amendment to the U. S. Constitution, pursuant to 42 U.S.C. § 1983, the New York State Human Rights Law (N.Y. Exec. Law §§ 290 *et seq.),* and the New York City Human Rights Law. Defendants also violated Plaintiff's Procedural Due Process Rights as guaranteed by the Due Process Clause of the United States Constitution, pursuant to 42 U.S.C § 1983.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

9. Venue is proper in this case pursuant to 28 U.S.C. § 1391.

10. On or about March 5, 2015 Plaintiff served a Notice of Claim upon Defendant New York City Department of Education. On or about April 23, 2015, Defendant New York City Department of Education examined Plaintiff under oath pursuant to Section 50(h) of the General Municipal Law. The present action is being commenced within one year and ninety days of the occurrence that is the subject of this action.

## PARTIES

11. Plaintiff RIMMA KUNIK is a 69 year old female, who is a resident of Queens, NY. At all times relevant to this complaint, Plaintiff was an "employee" of Defendant New York City Department of Education.

12. Defendant NEWYORK CITY DEPARTMENT OF EDUCATION ("DOE") is a municipal corporation incorporated under the laws of the State of New York, in charge of all public schools in the City of New York. Its headquarters are located at 52 Chambers Street, New York, NY 10007. At all times relevant to this complaint, Defendant DOE was Plaintiff's employer as that term is defined by the New York State Human Rights Law and the New York City Human Rights Law.

13. Defendant KAYE HOULIHAN since 2012 was the Principal of Fort Hamilton High School. At all times relevant to this complaint, Houlihan was Plaintiff's direct supervisor. Accordingly, Defendant Houlihan was Plaintiff's "employer" as that term is defined by the New York State Human Rights Law and the New York City Human Rights Law.

14. Defendant DORISH MUNOZ FUENTES was the Assistant Principal of Forth Hamilton High School until July 2013.

4

15. As set forth below, PRINCIPAL HOULIHAN and ASSISTANT PRINCIPAL FUENTES endorsed and directly participated in the discriminatory and harassing conduct against the Plaintiff.

## FACTUAL ALLEGATIONS

### *Background*

16. Plaintiff was a tenured New York City teacher for nearly twenty years and was employed by the New York City Department of Education. She commenced employment with the DOE in 1994 and was granted tenure in 1995. Plaintiff was licensed to teach English as a Second Language ("ESL") and English 7-12 and over the course of her long and distinguished career, Plaintiff proved herself a hard-working, dependable, and effective educator. She received positive performance evaluations and numerous accolades.

17. Plaintiff is a member of the Jewish religion, and she considers herself a proud Jewish-American. She is a native of what was the Union of Soviet Socialist Republics and what is now called Russia.

18. Since 2012, Plaintiff's Principal was Kaye Houlihan. Upon information and belief, Houlihan is of Irish and German descent and is Catholic. Assistant Principal Fuentes is of Puerto Rican national origin. Assistant Principal Fuentes was employed in Fort Hamilton High School as the Assistant Principal of the Foreign Languages and ESL Department from 2003 until 2013.

19. Despite Plaintiff's exemplary job performance as an ESL teacher to high school students, Defendant DOE, at the behest of Defendant Houlihan, callously and viciously

targeted Ms. Kunik based upon her religion which is Jewish and her age which was 68 at the time of her constructive discharge. Defendants initiated a campaign with the intent to cause Plaintiff to leave her employment on constructive discharge grounds.

20. Beginning in 2005, Assistant Principal Fuentes engaged in behavior that caused Plaintiff to complain to Ms. Chester, then principal of Fort Hamilton High School.  At that time, Plaintiff wrote a letter to her in which she described Fuentes' unacceptable demeanor when dealing with Plaintiff. Plaintiff continued to perform all the obligations imposed on her by the contract she was employed under. Fuentes' behavior included an unacceptable tone of voice, screaming, making degrading and slanderous remarks. She continued behaving this way until Plaintiff wrote another letter dated June 11, 2011, asking her to stop the insulting demeanor and public humiliation and this time directly attributing her behavior to discrimination on the basis of religion. Plaintiff did not provoke Fuentes' behavior which was the result of deep seated anti-Semitism that Plaintiff referred to in her letter. In January 2012, Fuentes responded to the June 2011 letter by giving Plaintiff an Unsatisfactory rating, the first in her forty-two year career as an ESL teacher, based on an observation made on the last day of classes in the fall semester. The rating had no factual basis, but it prevented Plaintiff from securing a per-session position for the 2012 spring semester that she applied for because the next time that Fuentes came to observe Plaintiff, the allegedly failing teacher, was on the last day of classes in the spring semester.

21. In June 2012, six months later, Fuentes gave Plaintiff a satisfactory rating for the observed class and for the whole 2011-2012 school year. However, because the second

observation took place on the last day of classes, Plaintiff lost the opportunity to apply for work in the summer school in the summer of 2012.

22. Other discriminatory actions of the kind performed by Fuentes included not giving Plaintiff the additional classes she requested.   In the spring of 2010, Plaintiff asked Fuentes to give her a sixth period class in the fall semester. She did not.   Although the department needed two additional sixth period classes paid for per-session and Plaintiff specifically asked for one and had the seniority to get it, she did not offer it to Plaintiff. Her behavior was an expression of her negative emotions described above and was obviously in violation of the law and DOE policy.

23. These discriminatory and retaliatory actions resulted in lost wages and lost pension benefits.

24. Fuentes always observed Plaintiff's classes during the last day of classes for a given semester. Normally, it was period 8 or 9 when attendance is the lowest. Plaintiff usually had good attendance because her students understood the value of her classes.

25. In Plaintiff's letter to the UFT representative at the school in 2012, Plaintiff explained that it was absolutely impossible to discuss anything with Fuentes in a peaceful manner because she did not understand that laws were made to be observed, be it a student's placement in the wrong level, which was always a topic of discontent for Ms. Fuentes, or a teacher's schedule.

26. Moreover, Fuentes would write Plaintiff up as "confrontational" when Plaintiff tried to show her why what she did in class or in the department was appropriate. These circumstances were described in an Observation Report dated April 9, 2013. Plaintiff could not work under a supervisor whose practices were discriminatory. In her letter

dated April 16, 2013, she complained about the existing situation to the then new principal, Houlihan, who not only disregarded the complaint, but also used it to further harass and denigrate Plaintiff in order to achieve the objective of forcing Plaintiff to resign.

27. Throughout her employment at Fort Hamilton High School, Plaintiff never asked her supervisors for any privileges or preferential treatment. Plaintiff always responded appropriately to all the assignments given to her by Fuentes, as recorded in the letters Plaintiff wrote addressing these matters.

28. Members of the administration, including Principal Houlihan and Assistant Principal Fuentes, harassed Plaintiff for a long time, consistently engaging in numerous acts that put Plaintiff into a position where she actually could not perform her duties, such as:

   (A)      reassigning Plaintiff, in September of 2012 to classrooms too far apart to get to in a timely fashion between periods, making her literally run (at the age of 66), although she suffered from sciatica (This "marathon" eventually resulted in Plaintiff hitting her elbow while holding the heavy metal door to the backyard with her foot. She experienced excruciating pain in her elbow and could not even write on the board, was diagnosed with a bruised bone, and had to stay at home for a week);

   (B)      assigning her, without the contractually required prior notice, to teach English to native speakers of English although Plaintiff was not a native speaker of English, was tenured under her ESL license, and never completed probation for NYC public Schools in this subject. It also violated her seniority rights as her department had teachers who were native speakers of English, had English 7-12 licenses, and were far below Ms. Kunik in their seniority rights;

(C)    changing the Plaintiff's classes again in the spring semester of 2013 and creating for her the most challenging schedule in the whole Department of Foreign Languages and ESL ever, forcing her to literally resort to no more than 5 hours of sleep daily for the whole spring semester of the 2012-2013 school year in order to comply with her contractual obligations. It was an unsurmountable amount of work for one person. No doubt, it was created intentionally to force her to retire. This unpaid for labor seriously undermined Plaintiff's health.

29. This continuous discrimination and harassment forced Plaintiff to take one month's sick leave in March of 2014.

30. Assistant Principal Fuentes regularly mistreated Plaintiff. Fuentes yelled at her in the presence of faculty and students and picked on her and discriminated against her on the basis of her religion. Plaintiff approached her about this directly but was unsuccessful.

31. When Principal Houlihan told Plaintiff to give her the artifacts (responses to observations) in September of 2014, she instructed Plaintiff to rewrite them on special sheets created for that purpose at the school, although Plaintiff was using the format and recommendations of the DOE and/or the United Federation of Teachers website. She gave Plaintiff three days to complete the assignment although one of the three days was the Jewish holiday of Yom Kippur, the holiest day of the year for Jews, on which Plaintiff fasts for 25 hours, worships in synagogue, and does not work. Plaintiff explained to Principal Houlihan that she needed an additional day to complete the assignment. However, Principal Houlihan refused to give her an extra day and said, that three days, which included Yom Kippur, was enough time.

32. Proof of the fact that the treatment Plaintiff received was based on or related to religious discrimination and/or age discrimination is the Principal's and the Assistant Principal's

9

demeanor.   The Principal and Assistant Principal were relentless. When it became
obvious that they used incorrect information, generated in Plaintiff's account on Skedula
while Plaintiff was away on sick leave, Principal Houlihan refused to correct the rating,
investigate and rectify the situation, or assist Plaintiff in proving that certain information
could not be used for her evaluation. Plaintiff was thereby prevented from getting a
higher rating for the 2013-2014 school year.

33. There are currently at least four cases brought by former teachers against the principal of
Fort Hamilton High School. Three cases were initiated by Jews.

34. There were two teachers in Plaintiff's department who planned to retire at the same
time--the Plaintiff and a teacher who taught Greek and ESL. That teacher was able to
retire at the time she selected while Plaintiff was constructively discharged. Another
teacher in the same age category as Plaintiff, who taught ESL and Arabic, is still
employed at the school.

35. During the 2012-2013 school year, observers observed Plaintiff three times. Each
observer stayed in Plaintiff's classroom for only one period of the two period class that
constituted one block of instruction, covered by one lesson plan taught by Plaintiff.
Without having any factual knowledge about the way Plaintiff covered the remaining
part of the class, each observer evaluated Plaintiff for the two period block, including the
part of the class that they did not observe.

36. In the Observation Report issued on May 9, 2013, Assistant Principal Fuentes,in a non-
stop process of finding fault with Plaintiff, inappropriately stated that Plaintiff had low
expectations of her students because Plaintiff asked a student a very reasonable

10

question--why he had missed a class. The question obviously had no negative impact on the student who was actively engaged in class work, according to Fuentes herself.

37. Plaintiff repeatedly experienced age discrimination. During the 2013-2014 school year, the school paid $750 per person for participating in a professional development seminar referred to as Development in Teaching Writing. Although this was known to be an area of interest for Plaintiff, she was not chosen to attend. No person over age 50 was sent there to participate.

38. Defendants also changed Plaintiff's position and insisted that she teach English courses, not ESL. Defendants also caused Plaintiff to receive a "U" (unsatisfactory) rating for the 2012-2013 academic school year and a "Developing" rating for the 2013-2014 academic school year—ratings that she had never before received.

39. Furthermore, Defendants failed to properly notify her as to the change in her teaching schedule, a clear violation of her Contract.

40. The actions taken by Defendants were for the purpose of causing Plaintiff to retire.

41. The actions taken by Defendants caused Plaintiff extreme emotional distress and anxiety and compelled her to undergo medical visits for the treatment of her conditions. Among the illnesses she experienced was a stroke-like episode. She continues to suffer from the effects of the incident which took place within an hour of the meeting with the principal. Plaintiff's receiving the U-rating for the 2012-2013 school year was also an excruciating experience that caused a thyroid gland malfunction that can only be corrected by surgery which she has yet to undergo. The stress the Plaintiff was exposed to also caused memory loss which is continuing.

42. Defendants not only changed the courses Plaintiff taught, Defendants prepared false reports denigrating Plaintiff's ability and in this way created a pervasive hostile work environment.

43. During post-observation conferences, Plaintiff was subjected to an interrogation, had her answers intentionally misinterpreted by Defendants, and was openly bullied and mimicked.

44. Defendants' actions amounted to age discrimination and religious discrimination.

45. Beginning in 2012, Defendants initiated a campaign to cause Plaintiff to resign prior to her twenty-first year of tenured employment.

46. Upon information and belief, Defendants afforded Plaintiff's similarly situated younger colleagues and non-Jewish colleagues different treatment.

47. Specifically, Defendants scheduled two classes so distant from one another that Plaintiff could only get to the later class in time if she ran.

48. Plaintiff received low ratings, Unsatisfactory in 2012-2013 and Developing in 2013-2014—which she had never received before. Defendants' actions caused Plaintiff extreme distress and anxiety.

49. Because of the Unsatisfactory rating, Plaintiff was prohibited from teaching summer school and could not work on her personal time.

50. As part of the new evaluation system that was introduced in the 2013-2014 school year, Principal Houlihan and a number of Assistant Principals observed Plaintiff six times in that school year. Plaintiff filed at least five APPR requests claiming that the observation reports did not reflect the observed procedures. Principal Houlihan consistently refused to accept Plaintiff's arguments and adjust the ratings.

51. At least one of the reports was determined to be biased, unsubstantiated, and/or inappropriate and Principal Houlihan was instructed to change her ratings for that observation, which she did by removing the efficient ratings and substituting "N/A" which stands for "no information available" which brought the rating down.

52. After one meeting with Principal Houlihan, Tom Bisceglio, the UFT representative, stated to Plaintiff that she was being rated differently from the other teacher.

53. After several years of bullying, harassment and discrimination by Defendants, Plaintiff experienced a stroke-like episode while teaching a class in school.

54. Finally, Plaintiff resigned on December 9, 2014 because she could no longer tolerate the stressful working conditions which made her ill. In resigning in her twenty-first year of tenured employment, she lost the benefits she would have had had she completed another year.

55. By December 9, 2014, Plaintiff could no longer tolerate the perpetual mistreatment and was constructively discharged.

56. In resigning before Plaintiff completed her 21st year of employment, Plaintiff lost pension benefits in addition to the losses caused by Defendants in preventing her from working per-session as most teachers do in order to increase their earnings. She also lost the opportunity to contribute more funds to her tax deferred annuity account.

## CLAIMS FOR RELIEF

## AS AND FOR THE FIRST CAUSE OF ACTION

*(Retaliation in violation of the First Amendment and the Equal Protection Clause of the United States Constitution pursuant to 42 U.S.C. § 1983, the New York State Human Rights Law, and the New York City Human Rights Law on the basis of age)*

57. Plaintiff repeats and realleges paragraphs 1 through 56, as though fully set forth herein.

58. By way of the foregoing, in: (1) giving Plaintiff an Unsatisfactory rating and Developing rating following formal observations; (2) causing Plaintiff to walk long distances between classrooms despite severe sciatica, discriminating against her on the basis of her age and creating a hostile work environment in violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983; Defendants retaliated against Plaintiff for exercising her rights under the First Amendment.

## AS AND FOR THE SECOND CAUSE OF ACTION

*(Violation of Procedural Due Process Rights in violation of the Due Process Clause of the 14th Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.)*

59. Plaintiff repeats and re-alleges paragraphs 1 through 58 of the Complaint as though fully set forth herein.

60. By way of the foregoing, in causing Plaintiff to be constructively discharged before she completed her twenty first year of employment as a result of which Plaintiff lost significant benefits, Defendants violated Plaintiff's procedural due process rights as guaranteed by the Due Process Clause of the 14th Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983.

## AS AND FOR THE THIRD CAUSE OF ACTION

*(Religious Discrimination in violation of the Equal Protection Clause of the 14th Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983)*

61. Plaintiff repeats and realleges paragraphs 1 through 60 as though fully set forth herein.

62. By way of the foregoing, in: (1) subjecting Plaintiff to disciplinary action premised upon unfounded allegations on the basis of her religion; (2) subjecting Plaintiff to objectively deplorable working conditions on the basis of her religion; Defendants discriminated against Plaintiff on the basis of her religion in violation of her rights as guaranteed by the Equal Protection Clause of the 14th Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983.

## AS AND FOR THE FOURTH CAUSE OF ACTION

*(Religious discrimination in violation of the New York State Human Rights Law, N.Y. Exec Law § 290 et. seq.)*

63. Plaintiff repeats and realleges paragraphs 1 through 62 as though fully set forth herein.

64. By way of the foregoing, in: (1) subjecting Plaintiff to repeated disciplinary action premised upon unfounded allegations; (2) conducting deficient and biased investigations with the intent to discipline Plaintiff on the basis of her religion; (3) subjecting Plaintiff to unhealthy, unsafe, and objectively deplorable working conditions on the basis of Plaintiff's religion; (4) "pursuing an attack" on Plaintiff on the basis of her religion; (5) lodging repeated meritless charges against Plaintiff on the basis of her religion; (6) treating Plaintiff less well than her similarly situated non-Jewish colleagues; and (7) subjecting Plaintiff to a hostile work environment on the basis of Plaintiff's religion,

15

Defendant DOE discriminated against Plaintiff on the basis of her religion in violation of the New York State Human Rights Law (N.Y. Exec. Law §§ 290 *et. seq.*)

## AS AND FOR THE FIFTH CAUSE OF ACTION

*(Religious Discrimination in violation of the New York City Human Rights Law)*

65. Plaintiff repeats and realleges paragraphs 1 through 64 as though fully set forth herein.

66. By way of the foregoing, in: (1) subjecting Plaintiff to repeated disciplinary action premised upon unfounded allegations; (2) conducting deficient and biased investigations with the intent to discipline Plaintiff on the basis of her religion; (3) subjecting Plaintiff to unhealthy, unsafe, and objectively deplorable working conditions on the basis of Plaintiff's religion; (4) imposing improper ratings upon Plaintiff on the basis of her religion; (5) treating Plaintiff less well than her similarly situated non-Jewish colleagues; and (6) subjecting Plaintiff to a hostile work environment on the basis of her religion, Defendants discriminated against Plaintiff on the basis of her religion in violation of the New York City Human Rights Law.

## DEFENDANTS' LIABILITY

67. Defendants are liable for its deprivation of Plaintiff's rights because their acts were taken in accordance with the Defendants' custom or practice of discriminating and/or selectively treating individuals; these practices were so persistent and widespread that they constitute the constructive acquiescence of policymakers; and the individual policymakers directly participated in and/or tacitly condoned the discrimination/retaliation to which Plaintiff was subjected.

16

## PLAINTIFF'S DAMAGES

68. Plaintiff began to feel suicidal but did not disclose it to anyone out of shame and fear. She walked with her teeth clenched, had difficulties falling asleep and often cried while sleeping. She eventually scheduled an appointment on June 2, 2014 to discuss retirement.

69. Her symptoms included: non-stop anxiety, no more than five hours of sleep a day, extreme exhaustion, tearfulness and an inability to do exercise.

70. Plaintiff began to lose things and failed to go to doctor appointments.

71. Because of her low ratings, her pension benefits were diminished and she could not contribute to her Tax Deferred Annuity.

WHEREFORE, the Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, lost compensation, front pay, back pay, injunctive relief, liquidated damages, and any other damages permitted by law pursuant to the above referenced causes of action. It is respectfully requested that the Court grant the Plaintiff any other relief to which she is entitled, including but not limited to:

1.    Awarding reasonable attorneys fees and costs and disbursements of this action;

2.    Granting such other and further relief that to the Court seems just and proper.

Dated: Garden City, New York
        December 2, 2015

THE LAW OFFICE OF
STEVEN A. MORELLI, P.C.
*Attorneys for Plaintiff*
990 Stewart Avenue, Suite 130
Garden City, New York 11530
(516) 393-9151

_____
Mindy Kallus (MK 0960)

## VERIFICATION

State of New York          )
                           ) ss:
County of Nassau           )

RIMMA KUNIK, being duly sworn, deposes and says that she is the Plaintiff in the within action; that she has read the foregoing Verified Complaint and knows the contents thereof; that the same is true to her own knowledge, except as to those matters therein stated to be alleged on information and belief, and that as to those matters she believes them to be true.

RIMMA KUNIK

Sworn to before me this
2nd day of December  2015

Notary Public

LISA MARIE DESTEFANO
Notary Public, State of New York
No. 01DE6314507
Qualified in Suffolk County
Commission Expires November 17, 20 1