UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                :

RIMMA KUNIK,                           :
                                :

                       Plaintiff,   :
                                :

             - against -          :
                                :

NEW YORK CITY DEPARTMENT OF    :
EDUCATION, PRINCIPAL KAYE       :
HOULIHAN, AND ASSISTANT PRINCIPAL:
DORISH MUNOZ FUENTES,        :
                                :

                  Defendants.  :
                                :

------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___9/29/2017___

15-CV-9512 (VSB)

**MEMORANDUM & OPINION**

Appearances:

Stephen I. Lewbel
Melito & Adolfsen P.C.
New York, New York
*Counsel for Plaintiff*

John P. Guyette
*for* Zachary W. Carter
Corporation Counsel, City of New York
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

       Before me is the motion of Kaye Houlihan and Dorish Munoz Fuentes (the "Individual

Defendants") and the New York City Department of Education (the "DOE," and collectively

with the Individual Defendants, "Defendants") to dismiss Plaintiff Rimma Kunik's amended

complaint. (Doc. 30.) In her amended complaint, Plaintiff Rimma Kunik ("Plaintiff" or

"Kunik") brings retaliation, religious discrimination, age discrimination, hostile work

environment, constructive discharge, procedural due process, and municipal liability claims

under 42 U.S.C. § 1983.  Plaintiff also brings retaliation and religious discrimination claims under the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 *et seq.* ("NYCHRL"). For the reasons stated below, Defendants' motion to dismiss is GRANTED with regard to Plaintiff's retaliation, hostile work environment, constructive discharge, procedural due process, and municipal liability claims pursuant to § 1983, and DENIED with regard to Plaintiff's religious and age discrimination claims pursuant to § 1983.  In addition, because Plaintiff's claims pursuant to the NYSHRL and the NYCHRL are time-barred, Defendants' motion to dismiss those claims is GRANTED, and those claims are dismissed with prejudice.

## I.  **Background**[1]

### A.  *Parties*

Kunik is a 69-year-old female, native of Russia, and an observant member of the Jewish faith.  (Am. Compl. ¶¶ 11, 17, 31.)[2]  Kunik, a tenured teacher since 1995, was employed by the DOE at Fort Hamilton High School ("FHHS") from 1994 until her departure in 2014.  (*Id.* ¶¶ 2, 16.)  She was licensed to teach English as a Second Language ("ESL") and English grades 7 through 12, and throughout her career as an educator, Kunik received positive performance evaluations and accolades.  (*Id.* ¶ 16.)

From 2003 to 2013, Defendant Fuentes was the Assistant Principal of the Foreign Languages and ESL Department of FHHS (the "ESL Department").  (*Id.* ¶ 18.)  From 2012 until Kunik's departure, Defendant Houlihan was the Principal of FHHS.  (*Id.*)

---

[1] The following factual summary is drawn from the allegations of the amended complaint, which I assume to be true for purposes of this motion.  *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).  My references to these allegations should not be construed as a finding as to their veracity, and I make no such findings.

[2] "Am. Compl." refers to Plaintiff's amended complaint filed on September 14, 2016.  (Doc. 23.)

Defendant DOE is a municipal corporation incorporated under the laws of the State of New York, and is responsible for the operation of all public schools in the City of New York. (*Id.* ¶ 12.) Plaintiff was employed by the DOE during all time periods relevant to this action. (*Id.*)

### B. *Events Prior to the 2011 to 2012 School Year*

In 2005, Kunik wrote a letter to the principal of FHHS complaining of Defendant Fuentes's behavior towards Kunik. (*Id.* ¶ 20.) This behavior included Defendant Fuentes's "unacceptable tone of voice, screaming, [and] degrading and slanderous remarks."[3] (*Id.*)

In 2010, Defendant Fuentes denied Kunik's request for a sixth period class for the fall semester, despite Kunik's seniority and the ESL Department's need for additional sixth period classes. (*Id.* ¶ 22.) Defendant Fuentes again denied Kunik's request for a sixth period class in 2011, and the class was instead awarded to another teacher in the ESL Department—a teacher who, according to Kunik, was not Jewish and was of similar age as Kunik. (*Id.* ¶ 30.) The sixth period class "had an approximately 20% extra salary and was pensionable." (*Id.*) On June 11, 2011, Kunik wrote a letter directly to Defendant Fuentes "asking her to stop the insulting demeanor and public humiliation and . . . directly attributing [Fuentes's] behavior to discrimination on the basis of religion."[4] (*Id.* ¶ 20.)

### C. *The 2011 to 2012 School Year*

Following her June 11, 2011 letter, Defendant Fuentes gave Kunik an "unsatisfactory" rating for her performance in January 2012—Kunik's first unsatisfactory rating in her forty-two

---

[3] This letter is not attached to Plaintiff's amended complaint, and neither party has included it as part of their submissions related to Defendants' motion to dismiss.

[4] This letter is not attached to Plaintiff's amended complaint, and neither party has included it as part of their submissions related to Defendants' motion to dismiss.

year career as a teacher. (*Id.*) The unsatisfactory rating was based on Defendant Fuentes's observation of Kunik's class during the last day of classes in the fall semester, and the unsatisfactory rating prevented Kunik from securing a per-session position for the spring semester of 2012. (*Id.*) In June 2012, Defendant Fuentes gave Kunik a satisfactory rating for the 2011 to 2012 school year based upon an observed class on the last day of classes; "[h]owever, because the second observation took place on the last day of classes, Plaintiff lost the opportunity to apply for work in the summer school in the summer of 2012." (*Id.* ¶ 21.)

**D.** **_The 2012 to 2013 School Year_**

In September 2012, Kunik was assigned to classrooms that were far apart from one another, causing Kunik to run between classes in order to arrive for class on time. (*Id.* ¶ 28.) Running between the classrooms was difficult for Kunik because of her sciatica, and caused her to sustain an elbow injury. (*Id.*) Without any prior notice, Kunik was assigned to teach native English speakers, despite the fact that she was (1) not a native English speaker, (2) tenured under an ESL license, and (3) "never completed probation for NYC public Schools in this subject." (*Id.*) As a result of this reassignment Plaintiff was subjected to "mocking and ridicule by the students in the regular English class[es] due to [her] Jewish and Russian accent." (*Id.* ¶ 46.) Additionally, in the spring semester of 2013, Kunik was assigned a challenging schedule, "forcing her to literally resort to no more than 5 hours of sleep daily for the whole spring semester . . . in order to comply with her contractual obligations." (*Id.* ¶ 28.)

At some point in 2012, Kunik wrote a letter to the UFT[5] representative at FHHS.[6] (*Id.*

---

[5] "UFT" is not defined in the amended complaint; however, based upon the context I believe it stands for United Federation of Teachers, the labor union that represents most teachers in New York City public schools. *See United Federation of Teachers*, http://www.uft.org (last visited Sept. 23, 2017).

[6] This letter is not attached to Plaintiff's amended complaint, and neither party has included it as part of their submissions related to Defendants' motion to dismiss.

¶ 25.)  In the letter, Kunik explained that it was impossible to discuss matters with Defendant

Fuentes in a peaceful manner, including with regard to student placement and teacher

scheduling.  Thereafter, in a report dated April 9, 2013, Defendant Fuentes described Kunik as

"confrontational."  (*Id.* ¶ 26.)  A week later, on April 16, 2013, Kunik raised the problems she

was having with Defendant Fuentes to Defendant Houlihan, who had joined FHHS as Principal

in 2012.  (*Id.* ¶¶ 18, 26.)  Defendant Houlihan ignored Kunik's complaints.  (*Id.* ¶ 26.)  Kunik

received another unsatisfactory rating for the 2012 to 2013 school year, and a "developing"

rating for the 2013 to 2014 school year.  (*Id.* ¶¶ 38, 48.)  The unsatisfactory rating prohibited

Kunik from teaching summer school, and prevented her from "work[ing] on her personal time

for a per-session pay."  (*Id.* ¶ 49.)

### E.       *The 2013 to 2014 School Year*

During the 2013 to 2014 school year, Kunik was not chosen for Development in

Teaching Writing, a professional development seminar, nor was anyone over the age of 50

invited to participate.  (*Id.* ¶ 37.)   Throughout the school year, Defendant Houlihan observed

Kunik on six occasions.  (*Id.* ¶ 50.)  In connection with these observations, Kunik filed at least

five APPR requests[7] that claimed that the observation reports were not accurate, but Defendant

Houlihan refused to accept Kunik's arguments, nor did she adjust the ratings.  (*Id.*)  When one

such observation report was determined to be "biased, unsubstantiated, and/or inappropriate,"

Defendant Houlihan was asked to change the ratings for that observation report.  (*Id.*)

---

[7] "APPR request" is not defined in the amended complaint; however, based upon the context I believe it refers to an APPR Resolution Assistance Request, a form used by a teacher if she is "concerned about possible procedural violations related to any part of [her] Annual Professional Performance Review."  *See United Federation of Teachers*, http://www.uft.org/teaching/concerns-about-evaluation-system-or-your-rating (last visited Sept. 28, 2017).

In September 2014, Defendant Houlihan ordered Kunik to provide her with "artifacts"—"additional information about observations"—in six days.  (*Id.* ¶ 31.)  Two of the six days fell on Rosh-ha-Shana, the Jewish New Year, and the day after Rosh-ha-Shana was the Sabbath.  Therefore, Kunik could not work on three of the six days, and she asked Defendant Houlihan for a two-day extension based on Kunik's religious observances.  (*Id.*)  Defendant Houlihan refused to grant her the extension, because she believed that three days was enough time to complete the assignment.  (*Id* ¶ 31.)

Throughout this period, Kunik alleges that other teachers in the ESL Department were given better schedules than Kunik.  (*Id.* ¶ 46.)  Specifically, Kunik was assigned five advanced preparation classes, which required more work than basic or intermediate preparation classes, while other younger and non-Jewish teachers in the ESL Department received either fewer preparation classes or basic and intermediate preparation classes.  (*Id.*)

 Kunik resigned from her post on December 9, 2014.  (*Id.* ¶ 54.)  Because she resigned in her twenty-first year of tenured employment, Kunik lost certain benefits that she would have received had she completed an additional year.  (*Id.*)  She also lost the opportunity to contribute additional funds to her annuity account.  (*Id.* ¶ 56.)  During her final years at FHHS, Kunik suffered a "stroke-like episode," a thyroid malfunction, and emotional distress—injuries that she attributes to the treatment she was subjected to by Defendants.  (*Id.* ¶¶ 41, 53.)

## II.     <u>Procedural History</u>

Plaintiff initiated this action by filing a complaint on December 18, 2015.  (Doc. 5.)  After a number of issues arose with Plaintiff's service of the complaint, the parties appeared before me on July 13, 2016 to discuss the matter.  (*See* Docs. 7, 10, 12, 14, 19, 21.)  By order

dated July 14, 2016, I granted Plaintiff an extension to effectuate proper service on all

Defendants, and the parties were directed to meet and confer on or before September 12, 2016

regarding purported deficiencies in the complaint. (Doc. 21.) I also directed the parties to

submit a proposed briefing schedule if Defendants intended to file a motion to dismiss. (*Id.*)

Pursuant to that order, the parties notified me that Plaintiff would file an amended complaint and

advised me of their agreed upon schedule for the filing of Defendants' motion to dismiss. (*See*

Doc. 24.) On September 12, 2016, Plaintiff filed her Verified Amended Complaint ("Amended

Complaint"). (Doc. 23.) Defendants filed their motion to dismiss and memorandum of law on

November 10, 2016, (Docs. 30–31), Plaintiff filed her opposition papers on December 12, 2016,

(Doc. 32), and Defendants filed their reply on December 23, 2016, (Doc. 33).

### III.     <u>Legal Standard</u>

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A claim will have "facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* This standard demands "more than a sheer possibility

that a defendant has acted unlawfully." *Id.* "Plausibility . . . depends on a host of considerations:

the full factual picture presented by the complaint, the particular cause of action and its elements,

and the existence of alternative explanations so obvious that they render plaintiff's inferences

unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). A

complaint need not make "detailed factual allegations," but it must contain more than mere

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Iqbal,*

556 U.S. at 678 (internal quotation marks omitted).  Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions."  *Id.*

These pleading standards "appl[y] in conjunction with employment discrimination pleading standards."  *See Drew v. Plaza Constr. Corp.*, 688 F. Supp. 2d 270, 275 (S.D.N.Y. 2010) (citation omitted).  "Employment discrimination claims need not contain specific facts establishing a prima facie case of discrimination."  *Id.*  "Rather, an employment discrimination complaint 'must include only a short and plain statement of the claim that gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'"  *Id.* (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  In other words, "in the absence of a facially plausible discrimination claim that gives fair notice to a defendant of the acts that form the basis of the claim, dismissal at the pleading stage is warranted."  *Trachtenberg v. Dep't of Educ. of N.Y.*, 937 F. Supp. 2d 460, 465 (S.D.N.Y. 2013) (citation omitted).  In a discrimination case the facts required under *Iqbal* to be alleged in a complaint "need only give plausible support to a minimal inference of discriminatory motivation."  *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015).

IV.    **Discussion**

The Amended Complaint sets forth claims pursuant to § 1983 for violations of the First and Fourteenth Amendments of the Constitution, as well as claims pursuant to the NYSHRL and the NYCHRL.

A.    *Statutes of Limitations*

1.  **Section 1983**

The applicable statute of limitations for § 1983 claims arising in New York is three years.  *See Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004).  "Federal law determines

when a [§] 1983 cause of action accrues, and . . . that accrual occurs when the plaintiff knows or

has reason to know of the injury which is the basis of his action." *Hogan v. Fischer*, 738 F.3d

509, 518 (2d Cir. 2013) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)).

Here, Plaintiff commenced this action on December 18, 2015. Accordingly, Plaintiff's

§ 1983 claims are time-barred to the extent they accrued prior to December 18, 2012. The

incidents prior to December 18, 2012 are time-barred, which include:

- Kunik's letter in 2005, complaining of Defendant Fuentes's behavior towards Kunik, (Am Compl. ¶ 20.);

- Defendant Fuentes's denial of Kunik's request in 2010 for a sixth period class, (*id.* ¶ 22);

- Defendant Fuentes's denial of Kunik's request in 2011 for a sixth period class, "which had an approximately 20% extra salary and was pensionable," (*id.* ¶ 30);

- Kunik's letter to Defendant Fuentes on June 11, 2011, "asking [Defendant Fuentes] to stop the insulting demeanor and public humiliation and this time directly attributing [Defendant Fuentes's] behavior to discrimination on the basis of religion," (*id.* ¶ 20); and

- Kunik's receipt of an unsatisfactory rating in early 2012, which prevented her from securing a per-session position for the spring semester of 2012 and a position in the summer school session of 2012, (*id.*).

Plaintiff attempts to save these incidents so that she can assert them with regard to her retaliation

and hostile work environment claims on the basis that the continuing violation doctrine applies.

(Pl.'s Mem. 19.)[8] However, the Amended Complaint contains primarily a series of discrete

retaliatory events such as negative performance reviews and changed assignments, and thus the

continuing violation doctrine is not applicable to Plaintiff's retaliation claims. *See Nat'l R.R.

Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) ("[D]iscrete discriminatory acts are not

---

[8] "Pl.'s Mem." refers to the Memorandum of Law of Plaintiff Rimma Kunik in Opposition to the Motion to Dismiss the Amended Complaint of Defendants New York City Department of Education, Principal Kay Houlihan and Assistant Principal Dorish Munoz Fuentes. (Doc. 32-5.)

actionable if time barred, even when they are related to acts alleged in timely filed charges.").

Because Plaintiff's hostile work environment claim fails, (*see infra* Section IV.B.4), even if I consider all of the incidents supporting those claims, including incidents that would be time-barred but for the application of the continuing violation doctrine, I need not decide whether the continuing violation doctrine applies to Plaintiff's hostile work environment claims.

## 2. The NYSHRL and the NYCHRL

"Claims under the NYSHRL and NYCHRL are generally governed by a three-year statute of limitations." *Riccardo v. N.Y.C. Dep't of Educ.*, No. 16 Civ. 4891 (LAK) (JCF), 2016 WL 7106048, at *6 (S.D.N.Y. Dec. 2, 2016), *report and recommendation adopted sub nom. United States v. N.Y.C. Dep't of Educ.*, Nos. 16-cv-4291 (LAK), 16-cv-4891 (LAK), 2017 WL 57854 (S.D.N.Y. Jan. 4, 2017). However, pursuant to Education Law § 3813, "a one-year statute of limitations governs NYSHRL and NYCHRL claims against school districts and their officers." *Id.*; *see also* W*ade v. N.Y.C. Dep't of Educ.*, 667 F. App'x 311, 312 (2d Cir. 2016) (summary order) (affirming district court's dismissal of plaintiff's NYSHRL and NYCHRL claims because plaintiff filed those claims outside the one-year statute of limitations); *Floratos v. Int'l Leadership Charter Sch. Inc.*, No. 09 Civ. 9136(BSJ), 2011 WL 291852, at *2 (S.D.N.Y. Jan. 20, 2011) ("Discrimination and retaliation claims brought against the board of education, charter schools, and its officers under New York State and New York City Human Rights Laws are subject to a one year statute of limitations under Education Law § 3813(2-b)"); *Amorosi v. S. Colonie Indep. Central Sch. Dist.*, 849 N.Y.S.2d 485, 489 (2007) (holding that "the one-year limitation prescribed in Education Law § 3813(2-b) should govern discrimination claims against a school district"). Therefore, "[s]uits against the [D]OE or [D]OE officers for violations of the NYSHRL or NYCHRL must . . . be commenced within one year of the alleged discriminatory

act." *Floyd v. N.Y.C. Dep't of Educ.*, No. 10 Civ. 8951, 2014 WL 171156, at *7 (S.D.N.Y. Jan. 13, 2014).

Here, all of the allegations in Kunik's Amended Complaint took place prior to her resignation on December 9, 2014. Having failed to commence the instant action within one year of her resignation or of any other alleged discriminatory act, Kunik's state and city law claims are untimely. *See id.*

In support of her position that her claims are timely, Kunik cites to *Klein v. City of New York*, No. 10 Civ. 9568 PAE JLC, 2011 WL 5248169, at *9 (S.D.N.Y. Oct. 28, 2011), *report and recommendation adopted*, No. 10 Civ. 9568(PAE)(JLC), 2012 WL 546786 (S.D.N.Y. Feb. 21, 2012), and asserts that the applicable statute of limitations is one year and 90 days, because Kunik's claims are simultaneously governed by New York General Municipal Law § 50-i. Kunik's arguments are without merit. First, as a practical matter, the additional 90 days makes little difference for the timeliness of Kunik's claims, as the majority of the events alleged in the Amended Complaint occurred prior to 2012. Second, *Klein* states that the limitations period of one year and 90 days is only applicable to "any tort claim against a school district," and "the limitations period for any non-tort claim against a school district is one year." 2011 WL 5248169, at *9; *see also Margerum v. City of Buffalo*, 5 N.Y.S.3d 336, 339–40 (2015) (finding that discrimination claims under the Human Rights Law are not "founded upon tort"). Kunik does not bring any tort claims against the DOE or the Individual Defendants, and the GML does not otherwise render Kunik's state and city law claims timely. Accordingly, Plaintiff's NYSHRL and NYCHRL claims are time-barred.

### B.    *Section 1983 Claims*

"Section 1983 provides a civil claim for damages against any person who, acting under

color of state law, deprives another of a right, privilege or immunity secured by the Constitution or the laws of the United States." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). Section 1983 does not establish substantive rights, but it provides a means of redress for the deprivation of rights established elsewhere. *Id.* "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 2001)).

Kunik brings the following claims under § 1983: (1) retaliation under the First Amendment, (2) retaliation under the Equal Protection Clause, (3) discrimination on the basis of religion and age under the Equal Protection Clause, (4) hostile work environment, (5) constructive discharge, (6) violation of Procedural Due Process, and (7) *Monell* liability.[9] I address each claim in turn.

### 1. First Amendment Retaliation

To assert a First Amendment retaliation claim under § 1983, a plaintiff must plausibly allege that "(1) [her] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [her]; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. School Dist.*, 654 F. 3d 267, 272 (2d Cir. 2011)). Whether a public employee's speech is protected "encompasses two separate subquestions: '(1) whether the subject of the employee's speech was a matter of public concern and (2) whether the employee spoke as a citizen rather than solely as an employee.'" *Id.* (quoting

---

[9] Plaintiff concedes that her Amended Complaint is "not a model of clarity." (*See* Pl.'s Mem. 25.) The Amended Complaint alleges six causes of action. However, some of the causes of action assert or mention multiple claims. I address all claims addressed by the parties in their submissions, even if those claims do not appear as discrete causes of action in the Amended Complaint.

*Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011). "If the answer to either question is no, that is the end of the matter." *Id.*

With respect to whether a plaintiff's speech addresses a matter of public concern, courts consider "the content, form, and context of a given statement as revealed by the whole record." *Lewis v. Cowen*, 165 F.3d 154, 163 (2d Cir. 1999). "Speech involves matters of public concern 'when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.'" *Lane v. Franks*, 134 S. Ct. 2369, 2380 (2014) (quoting *Snyder v. Phelps*, 562 U.S. 443, 453 (2011)). Although a speaker's motive is not dispositive in determining whether the speech addresses a matter of public concern, *see Sousa v. Roque*, 578 F.3d 164, 170 (2d Cir. 2009), one consideration in making the determination is "whether the speech was calculated to redress personal grievances or whether it had a broader public purpose," *Singer v. Ferro*, 711 F.3d 334, 339 (2d Cir. 2013) (quoting *Lewis*, 165 F.3d at 163–64). "Whether an employee's speech addresses a matter of public concern is a question of law for the court to decide . . . ." *Lewis*, 165 F.3d at 163.

Defendants contend that "the Amended Complaint is entirely devoid of any factual allegations about the content or form of plaintiff's alleged speech or activity" and therefore Kunik's First Amendment claim must be dismissed. (Defs.' Mem. 7.)[10] I agree. The Amended Complaint asserts three instances of timely-alleged speech or conduct, none of which plausibly establishes speech or conduct protected by the First Amendment: (1) Kunik wrote a letter to the UFT representative in 2012 explaining that "it was absolutely impossible to discuss anything

---

[10] "Defs.' Mem" refers to Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint. (Doc. 31.)

with [Defendant] Fuentes in a peaceful manner because she did not understand that laws were meant to be observed," (Am. Compl. ¶ 25); (2) Kunik wrote a letter to Defendant Houlihan on April 26, 2013, "complain[ing] about the existing situation" with Defendant Fuentes, (*id.* ¶ 26); and (3) Kunik filed five APPR requests "claiming that the [2013] observation reports did not reflect the observed procedures," (*id.* ¶ 50).

Considering "the content, form, and context of [these statements] as revealed by the whole record," *Lewis*, 165 F.3d at 163, the statements and the allegations related to them do not support an inference that Kunik's speech related to or impacted anyone other than Kunik herself. There are no allegations supporting a claim that Kunik's speech was advancing the interests of any other members of the school community, let alone a broader public purpose. *See Singer*, 711 F.3d at 339; *see also Dellate v. Great Neck Union Free Sch. Dist.*, No. CV 09-2567 (AKT), 2010 WL 3924863, at *13 (E.D.N.Y. Sept. 30, 2010) (granting motion to dismiss where the plaintiff's grievances related to supervisor maltreatment, including that the supervisor repeatedly berated, talked down to, and falsely criticized plaintiff and his job performance), *aff'd sub nom. Dellate v. Great Neck Union Free Sch. Dist.*, 448 F. App'x 164 (2d Cir. 2012). In fact, the allegations in the Amended Complaint support the opposite conclusion—that Kunik's concern was with actions taken specifically against her to the exclusion of any actions taken against her colleagues.[11] (*See, e.g.*, Am. Compl. ¶ 50.) As such, Kunik fails to demonstrate that her speech or conduct addressed a matter of public concern.[12] Because I decide that the subject of Kunik's

---

[11] While "widespread racism and anti-Semitism" are "clearly matters of public concern," *Feingold v. New York*, 366 F.3d 138, 160 (2d Cir. 2004), the Amended Complaint fails to point to any conduct or acts on the part of Defendants that extend beyond Kunik's personal experience, *see id.* (allowing First Amendment retaliation claim where plaintiff reported "wide-spread racism and anti-Semitism, inadequate training, and unjustified judicial delay" even though claims were based on plaintiff's personal experience).

[12] Additionally, the fact that Kunik complains solely of damages personal to her and requests relief in the form of monetary damages, (Am. Compl. ¶¶ 68–71), also supports the conclusion that she did not speak on any matter of

speech was not a matter of public concern, I need not address whether Kunik was speaking as an employee or a citizen; however, I note that the speech or conduct in the Amended Complaint relates to Kunik's employment and was made in connection with purported actions taken against her as an employee. For these reasons, Plaintiff fails to state a claim for First Amendment retaliation.

### 2. Retaliation Pursuant to the Equal Protection Clause

To state a retaliation claim based on an equal protection violation under § 1983, "[a] plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against [her], (3) because [s]he complained of or otherwise opposed discrimination." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 91 (2d Cir. 2015).

Assuming the facts in the Amended Complaint to be true and drawing all inferences in Kunik's favor, the facts as alleged in the Amended Complaint do not state a retaliation claim based on an equal protection violation. Such a claim requires Kunik to allege that she "complained of or otherwise opposed discrimination." *See id.* In her Amended Complaint, Kunik raises only one instance where she complained of or otherwise opposed discrimination: Kunik's letter to Defendant Fuentes on June 11, 2011, "asking [Defendant Fuentes] to stop the insulting demeanor and public humiliation and this time directly attributing [Defendant Fuentes's] behavior to discrimination on the basis of religion." (Am. Compl. ¶ 20.) This act took place prior to December 18, 2012 and is thus time-barred. (*See supra* Section IV.A.1.)

Kunik contends that she also engaged in protected activity when (1) she complained to

_____

public concern, *see Ruotolo v. City of New York*, 514 F.3d 184, 190 (2d Cir. 2008) (considering, in holding that the speech did not address a matter of public concern, that "[t]he relief sought [was] also almost entirely personal").

her UFT representative in 2012, (2) she reported Defendant Fuentes's behavior to Defendant Houlihan in 2013, and (3) she filed five APPR requests claiming that Defendants' observation reports did not reflect the observed procedures. (Pl.'s Mem. 16.) Kunik's arguments are not supported by the allegations in her Amended Complaint, which fail to demonstrate that Kunik's complaints relayed concerns of discriminatory behavior. Indeed, the Amended Complaint does not contain any facts that indicate these complaints had anything to do with Defendants' alleged discrimination. (*See, e.g.*, Am Compl. ¶ 25 (noting only that "it was impossible to discuss anything with Fuentes in a peaceful manner"), ¶ 26 (explaining only that "she complained about the existing situation" to Defendant Houlihan), ¶ 50 (stating only that "Plaintiff filed at least five APPR requests claiming that the observation reports did not reflect the observed procedures").) Accordingly, Plaintiff fails to state a claim for retaliation based on an equal protection violation.

### 3. Discrimination Pursuant to the Equal Protection Clause

An equal protection violation based on discrimination requires a plaintiff to show that "a government actor intentionally discriminated against [her] on the basis of [a protected characteristic]." *Hayden v. Cty. of Nassau*, 180 F.3d 42, 48 (2d Cir. 1999). To state a claim for discrimination, a plaintiff must allege: "(1) [s]he belonged to a protected class; (2) [s]he was qualified for the position; (3) [s]he suffered an adverse employment action; (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Roman-Malone v. City of New York*, No. 11 Civ. 8560(PAC), 2013 WL 3835117, at *4 (S.D.N.Y. July 25, 2013) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)).

For the third element, "a plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega*, 801 F.3d at 85 (quoting *Galabya v. N.Y.C. Bd. Of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). "An

adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (quoting *Terry*, 336 F.3d at 138). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (quoting *Terry*, 336 F.3d at 138). The Second Circuit has held that "the assignment of 'a disproportionately heavy workload' can constitute an adverse employment action." *Id.* (quoting *Feingold v. New York*, 366 F.3d 138, 152–53 (2d Cir. 2004)).

For the fourth element, an inference of discriminatory intent "can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). To establish disparate treatment, a plaintiff must allege that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000)). "Ordinarily, the question whether . . . employees are similarly situated is a question of fact for the jury." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).

As noted above, to survive a motion to dismiss, a plaintiff need "not plead a prima facie case of discrimination," *Swierkiewicz*, 534 U.S. at 515, but a plaintiff "must plead enough facts to state a discrimination claim that is plausible on its face," *Roman-Malone*, 2013 WL 3835117, at *4. Put differently, "absent direct evidence of discrimination, what must be plausibly

supported by facts alleged . . . is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311.

a. Religious Discrimination

Kunik brings a claim for religious discrimination in violation of the Equal Protection Clause pursuant to § 1983. She alleges that the Individual Defendants took the following actions because of her religion: (1) assigned her a more challenging schedule than other teachers in the ESL department, (Am. Compl. ¶ 28); (2) assigned her to classrooms far apart from one another, causing her to run between classes, (*id.*); (3) gave her ratings of unsatisfactory and developing for her performance, resulting in her inability to garner additional pay, (*id.* ¶¶ 38, 48, 49); and (4) denied her additional time on an assignment that had to be completed over days of religious observance, (*id.* ¶ 31). Kunik identifies her comparators in the ESL Department by name, and she alleges upon information and belief that they are not of the Jewish faith.

Defendants argue that Kunik's religious discrimination claim should be dismissed for failure to plead the requisite adverse employment action. Specifically, Defendants assert that negative performance reviews "do not constitute adverse employment actions 'absent some accompanying adverse result such as demotion, diminution of wages, or other tangible loss.'" (Defs.' Mem. 15 (quoting *Brown v. City Univ. of N.Y.*, 419 F. Supp. 3d 315, 332 (E.D.N.Y. 2005).) However, Kunik connects her receipt of an unsatisfactory rating in the 2012 to 2013 school year to her inability to participate in the paid summer school session, (*see* Am. Compl. ¶¶ 48–49), and thus alleges an accompanying tangible loss. Furthermore, the cumulative effect of Kunik's allegations, including that she received a heavier workload than her comparators, meets the "minimal" bar necessary to plead an adverse employment action at the pleadings stage.

*See Vega*, 801 F.3d at 85 (holding that a "disproportionately heavy workload can constitute an adverse employment action" (internal quotation marks omitted)).

Defendants also argue that Kunik fails to allege an inference of discriminatory intent. Indeed, the allegations in the Amended Complaint concerning the Individual Defendants' statements and conduct towards Plaintiff are vague. Kunik does not point to any non-conclusory "direct evidence that [the Individual Defendants] harbored a discriminatory bias." *Shein v. N.Y.C. Dep't of Educ.*, No. 15cv4236 (DLC), 2016 WL 676458, at *5 (S.D.N.Y. Feb. 18, 2016). For example, Kunik does not allege that the Individual Defendants "ever uttered a slur or derogatory statement regarding [her] religion or the Jewish faith." *Id.* However, Kunik may also establish an inference of discriminatory intent by showing "the more favorable treatment of employees not in the protected group." *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz*, 584 F.3d at 502). The allegations in the Amended Complaint that the Individual Defendants gave non-Jewish employees preferential treatment are quite threadbare, but they suffice to allege a plausible inference of discriminatory intent based on disparate treatment. For example, the Amended Complaint alleges that Kunik's non-Jewish colleagues received better schedules and a lighter workload. (Am. Compl. ¶¶ 28, 46.) Kunik identifies her comparators by name, noting that they were part of the same ESL Department. *See, e.g.*, *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 495 (E.D.N.Y. 2016) (denying motion to dismiss where plaintiff identified one comparator by name and alleged he was subject to the same supervisor); *Trachtenberg*, 937 F. Supp. 2d at 471 (denying motion to dismiss where plaintiff's allegations were "thin on specifics" as to how her comparators were similarly situated and what disparate treatment they were subjected to). Although Defendants may ultimately be able to show that Kunik's comparators were not similarly situated, did not receive better schedules and/or lighter workloads, or that they

did not have discriminatory intent, these questions should not be resolved at the pleadings stage. *See Mandell*, 316 F.3d at 379.  Accordingly, Defendants' motion with respect to Plaintiff's § 1983 religious discrimination claim is denied.

b.  <u>Age Discrimination</u>

Kunik also brings, as part of her first cause of action, a claim for age discrimination in violation of the Equal Protection Clause pursuant to § 1983.  Kunik does not plead her cause of action under the Age Discrimination in Employment Act ("ADEA").  As Defendants correctly assert, (Defs.' Mem. 8–9), it is an open question in this Circuit whether age discrimination is an appropriate basis for a § 1983 cause of action, especially in the absence of an ADEA cause of action, *see, e.g.*, *Piccone v. Town of Webster*, 511 F. App'x 63, 63 n.1 (2d Cir. 2013) (summary order) ("It is an open question in our circuit whether the ADEA preempts age discrimination claims under Section 1983."); *Shein*, 2016 WL 676458, at *6 n.3 (collecting cases).  With no clear guidance from the Second Circuit, I decline to resolve this legal issue at this juncture. Therefore, I find that it is sufficient for Plaintiff to allege a colorable argument that her constitutional rights were violated.

As with her religious discrimination claim, Kunik alleges that the Individual Defendants took the following actions because of her age:  (1) assigned her a more challenging schedule than other younger teachers in the ESL Department, (Am. Compl. ¶ 28); (2) assigned her to classrooms far apart from one another, causing her to run between classes, (*id.*); (3) gave her ratings of unsatisfactory and developing for her performance, resulting in her inability to earn additional pay, (*id.* ¶¶ 38, 48); and (4) did not allow her to participate in a professional development seminar, (*id.* ¶ 37).  She identifies her comparators in the ESL Department by name, and she alleges upon information and belief that they are younger.  For the same reasons

that Kunik's religious discrimination claim survives the motion to dismiss stage, the allegations

in the Amended Complaint are enough for Kunik's age discrimination claim to proceed.

Accordingly, Defendants' motion with respect to Plaintiff's § 1983 age discrimination claim is

denied.

#### 4. Hostile Work Environment[13]

To state a claim for hostile work environment, "a plaintiff must plead facts that would

tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is,

creates an environment that a reasonable person would find hostile or abusive; (2) creates an

environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an

environment because of the plaintiff's [protected characteristic]." *Patane v. Clark*, 508 F.3d 106,

113 (2d Cir. 2007). Thus, "a work environment will be considered hostile if a reasonable person

would have found it to be so and if the plaintiff subjectively so perceived it." *Drew*, 688 F.

Supp. 2d at 279 (quoting *Brennan v. Metropolitan Opera Ass'n*, 192 F.3d 310, 318 (2d Cir.

2003)). This two-part inquiry is necessarily a fact-intensive one, and the Second Circuit has

"repeatedly cautioned against setting the bar too high" in the context of a motion to dismiss a

hostile work environment claim. *Patane*, 508 F.3d at 113 (quoting *Terry*, 336 F.3d at 148).

The Amended Complaint fails to clear even this low hurdle. Kunik alleges the following

facts in support of her hostile work environment claim: (1) Kunik was assigned "classrooms too

far apart to get to in a timely fashion between periods," (Am. Compl. ¶ 28); (2) she was assigned

to teach English to native English speakers rather than her customary ESL classes, even though

she was not a native English speaker, (*id.*); (3) she was assigned a challenging schedule of

---

[13] Although Plaintiff does not assert a separate cause of action for hostile work environment, she states in her first cause of action that Defendants "create[d] a hostile work environment . . . pursuant to § 1983." (Am. Compl. ¶ 58.) Both parties briefed this claim in their submissions, (*see* Defs.' Mem. 22–23; Pl.'s Mem. 14–15); therefore, I address it here.

classes, (*id.*); and (4) she received negative performance reviews, some of which prevented her from receiving additional benefits, (*id.* ¶ 50). Even assuming these actions were motivated by discriminatory animus, they fail to demonstrate the sort of conduct courts have found "sufficiently pervasive to alter the conditions of the victim's employment." *Kassner*, 496 F.3d at 240; *see also Trachtenberg*, 937 F. Supp. 2d at 472–73 (dismissing hostile work environment claim where plaintiff alleged that, on account of her age, she was subjected to excessive scrutiny, negative performance evaluations, a lack of training opportunities, and a poorly ventilated office); *Littlejohn*, 795 F.3d at 321 (dismissing hostile work environment claim where plaintiff alleged that employer made negative statements about plaintiff, was impatient and used harsh tones with plaintiff, distanced herself from plaintiff, required plaintiff to recreate work, wrongfully reprimanded plaintiff, increased plaintiff's schedule, and was sarcastic to plaintiff).

Kunik also states conduct that would be time-barred but for the application of the continuing violation doctrine, (*see supra* Section IV.A.1), alleging that Defendant Fuentes "publicly humiliate[ed]" her, (Am. Compl. ¶ 20). Kunik alleges that Defendant Fuentes's "public humiliation" included "an unacceptable tone of voice, screaming, [and] making degrading and slanderous remarks." (Am. Compl. ¶ 20.) Even if I consider this conduct as timely, Kunik fails to allege the content of the statements, the frequency of these remarks, or the effect that they had on her ability to teach. *See Trachtenberg*, 937 F. Supp. 2d at 473. Nor does she allege a regular pattern of consistent remarks over the relevant time period. *See, e.g.*, *Ward v. Shaddock*, No. 14-CV-7660 (KMK), 2016 WL 4371752, at *7 (S.D.N.Y. Aug. 11, 2016) (allowing hostile work environment claim where plaintiff alleged "a pattern of racial slurs and derogatory remarks by [defendant] over the course of at least seven years"); *Castagna v. Luceno*, No. 09-CV-9332 (CS), 2011 WL 1584593, at *8 (S.D.N.Y. Apr. 26, 2011) (allowing hostile

work environment claim where plaintiff alleged "a pattern of behavior" including, among other things, defendant's personally demeaning comments, remarks about her laugh, and numerous specific instances of inappropriate behavior toward others in plaintiff's protected class), *aff'd*, 744 F.3d 254 (2d Cir. 2014).  Putting to the side Plaintiff's conclusory statements concerning discrimination and harassment, (*see, e.g.*, Am. Compl. ¶¶ 29, 44), the sum of the "public humiliation" allegation and the other allegations is insufficient to raise a plausible claim for hostile work environment, *see Alfano v. Costello*, 294 F.3d 365, 379 (2d Cir. 2002) (collecting cases where "the evidence was held insufficient as a matter of law to alter the terms and conditions of employment").  Accordingly, Plaintiff fails to state a claim for hostile work environment.

### 5.  Constructive Discharge[14]

To state a claim for constructive discharge that stems from an alleged hostile work environment, "a plaintiff 'must show working conditions so intolerable that a reasonable person would have felt compelled to resign.'" *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004)).  "This standard is higher than the standard for establishing a hostile work environment." *Id.*; *see also Roman-Malone*, 2013 WL 3835117, at *9 (dismissing claim for constructive discharge where plaintiff failed to state a claim for a hostile work environment).

Kunik's Amended Complaint, which does not raise constructive discharge as a separate cause of action, makes clear that the acts underlying her hostile work environment claim are the same as those upon which her constructive discharge claim is based.  (*See, e.g.*, Am. Compl. ¶ 55

---

[14] Although Plaintiff does not assert a separate cause of action for constructive discharge, she states that she was "constructively discharged" in her second cause of action.  (Am. Compl. ¶ 60.)  Both parties briefed this claim in their papers, (*see* Defs.' Mem. 20–21; Pl.'s Mem. 17–19), and I address it herein.

("Plaintiff could no longer tolerate the perpetual mistreatment and was constructively discharged.").) For the reasons that Plaintiff fails to state a claim for hostile work environment, the same is true for her constructive discharge claim.

### 6. Procedural Due Process

"To state a claim for a violation of procedural due process, [a plaintiff] must allege that she was deprived [of] a protected interest in liberty or property, without adequate notice or opportunity to be heard." *Roman-Malone*, 2013 WL 3835117, at *3. Where the benefit is related to employment, a "[p]laintiff must first demonstrate that [s]he has 'a property interest, created by state law, in the employment or the benefit that was removed.'" *Stewart v. City of New York*, No. 11 Civ. 6935 (CM), 2012 WL 2849779, at *13 (S.D.N.Y. July 10, 2012) (quoting *Bernheim v. Litt*, 79 F.3d 318, 322 (2d Cir. 1996)). A plaintiff must then demonstrate that the state actor deprived her of this property interest without affording her due process—in other words, without notice and opportunity to be heard. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." (emphasis in original)).

Kunik alleges that she lost "significant benefits" as a result of her constructive discharge, thus violating her procedural due process rights as guaranteed by the Fourteenth Amendment. (Am. Compl. ¶ 60.) These "significant benefits" included the loss of the ability to earn additional money by working during the summer and at other times, pension benefits, and the opportunity to contribute more funds to her annuity account. (*Id.* ¶ 56.) I need not address whether Kunik had a legitimate claim of entitlement to these benefits, since Kunik fails to allege

that Defendants deprived her of these benefits without affording her due process.  *See Zinermon*,

494 U.S. at 125.  Kunik does not allege any facts that tend to demonstrate that she did not have

an adequate post-deprivation remedy.  In fact, in the entire Amended Complaint, Kunik does not

once take issue with any grievance policy or process at the DOE.  Accordingly, Plaintiff fails to

state a claim for violation of procedural due process.

### 7.  Municipal Liability

The Supreme Court held in *Monell v. Dep't of Social Services*, 436 U.S. 658, 694

(1978), that a municipal organization may be held liable under § 1983 only if the plaintiff's

injury is the result of municipal policy, custom, or practice.  In order to properly state a claim for

municipal liability a plaintiff must allege "(1) an official policy or custom that (2) causes the

plaintiff to be subjected to (3) a denial of a constitutional right."  *Zahra v. Town of Southold*, 48

F.3d 674, 685 (2d Cir. 1995) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

Kunik fails to allege the existence of a municipal policy, custom, or practice.  Outside of

one conclusory allegation that Defendants' acts "were taken in accordance with the Defendants'

custom or practice of discriminating," (Am. Compl. ¶ 67), Kunik does not allege any facts to

support that her rights were violated pursuant to any official policy or custom.  Indeed, Kunik

herself explicitly "acknowledges the Amended Complaint contains no specific allegation that the

DOE proper had a custom or practice of violating its teachers' constitutional rights."  (Pl.'s

Mem. 25.)  For these reasons, Plaintiff fails to state a claim for *Monell* liability.

### V.    Conclusion

For the reasons stated above, it is hereby ordered that Defendants' motion to dismiss is

GRANTED IN PART and DENIED IN PART.  Defendants' motion with respect to Plaintiff's

retaliation, hostile work environment, constructive discharge, procedural due process, and

municipal liability claims pursuant to § 1983 is GRANTED.  Defendants' motion with respect to

Plaintiff's religious and age discrimination claims pursuant to § 1983 is DENIED.  Plaintiff's

claims pursuant to the NYSHRL and the NYCHRL are time-barred and dismissed with

prejudice.  The parties are instructed to meet and confer regarding the scheduling of discovery

and should submit a proposed case management plan and scheduling order on or before October

20, 2017.  The Clerk of Court is respectfully directed to terminate the pending motion at

Document 30.

SO ORDERED.

Dated: September 29, 2017
      New York, New York

Vernon S. Broderick
United States District Judge