```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
                                                      :
RIMMA KUNIK,                                          :
                                                      :
                              Plaintiff,              :
                                                      :                15-CV-9512 (VSB)
               - against -                            :
                                                      :                **OPINION & ORDER**
                                                      :
NEW YORK CITY DEPARTMENT OF                           :
EDUCATION, PRINCIPAL KAYE                             :
HOULIHAN, AND ASSISTANT PRINCIPAL                     :
DORISH MUNOZ FUENTES,                                 :
                                                      :
                              Defendants.             :
                                                      :
------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/31/2020

Appearances:

Steven I. Lewbel
Melito & Adolfsen P.C.
New York, New York
*Counsel for Plaintiff*

John P. Guyette
*for* Zachary W. Carter
Corporation Counsel, City of New York
New York, New York
*Counsel for Defendants*

VERNON S. BRODERICK, United States District Judge:

Before me is the motion of Kaye Houlihan and Dorish Munoz Fuentes (the

"Defendants") for summary judgment dismissing Plaintiff Rimma Kunik's amended complaint,

(Doc. 30), which asserts claims of retaliation, religious discrimination, age discrimination,

hostile work environment, constructive discharge, procedural due process, and municipal

liability pursuant to Title 42 United States Code, Section 1983. Plaintiff also brings retaliation

and religious discrimination claims under the New York State Human Rights Law, N.Y. Exec.

Law §§ 290 *et seq.* ("NYSHRL") and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 *et seq.* ("NYCHRL").

In a Memorandum & Order filed on September 27, 2017, I dismissed Plaintiff's § 1983 claims for retaliation, hostile work environment, constructive discharge, procedural due process, and municipal liability, and dismissed as time barred Plaintiff's § 1983 claims to the extent they accrued prior to December 18, 2012. I also dismissed Plaintiff's NYSHRL and NYCHRL claims as time-barred. (Doc 34, at 9–11). With regard to the incidents that occurred prior to December 18, 2019, I held that the incidents were primarily a series of discrete events which did not constitute a continuing violation, and were, therefore, barred from consideration as untimely. (*Id.*) Plaintiff's claims for religious and age discrimination pursuant to § 1983 after December 18, 2012, were not dismissed, and are the only claims that remain in the case.

Because I find that Plaintiff has failed to establish a prima facie case of age or religious discrimination under § 1983, Defendants' motion for summary judgment is GRANTED.

I. **Background**

A. *Parties*

As of the date of the filing of the Amended Complaint, Kunik was a 69-year-old female, native of Russia, and an observant member of the Jewish faith. (Defs.' Fact Statement ¶ 1.)[1] Kunik was employed by the Department of Education at Fort Hamilton High School ("FHHS") from 1994 until her departure in 2014, and became a Department of Education tenured teacher in 1995. (Defs.' Fact Statement ¶ 2; Pl.'s Fact Statement ¶¶ 106-107.)[2] She was licensed to teach English as a Second Language ("ESL") and English grades 7 through 12. (Defs.' Fact Statement

---

[1] "Defs.' Fact Statement" refers to Defendants' Local Rule 56.1 Statement of Material Facts with Plaintiff's responses. (Doc. 69-1.)

[2] "Pl.'s Fact Statement" refers to Plaintiff's Local Rule 56.1 Statement of Material Facts. (Doc. 69-2)

2

¶ 3; Pl.'s Fact Statement ¶ 110.)

From 2003 to 2013, Defendant Fuentes was the Assistant Principal of the Foreign Languages and ESL Department of FHHS (the "ESL Department"). (Pl.'s Fact Statement ¶ 241.) From 2012 until Kunik's departure, Defendant Houlihan was the Principal of FHHS. (Pl.'s Fact Statement ¶ 188.)

### B. *Plaintiff's Allegations*[3]

After working at FHHS since 1994, Plaintiff experienced discriminatory behavior from her supervisors in the 2012-2013 and 2013-2014 school years. In the spring semester of 2013, Kunik was assigned a challenging schedule, "forcing her to literally resort to no more than 5 hours of sleep daily for the whole spring semester . . . in order to comply with her contractual obligations." (Am. Compl. ¶ 28.) Thereafter, in a report dated April 9, 2013, Defendant Fuentes described Kunik as "confrontational." (Ernst Decl. Ex. M at 6.)[4] A week later, on April 16, 2013, Kunik raised the problems she was having with Defendant Fuentes to Defendant Houlihan. (Am. Compl. ¶ 26.) Defendant Houlihan ignored Kunik's complaints. (*Id.* ¶ 26.) Kunik received an "unsatisfactory" rating for the 2012-2013 school year, and a "developing" rating for the 2013-2014 school year. (Defs.' Fact Statement ¶¶ 72, 88.) The unsatisfactory rating prohibited Kunik from teaching summer school, and prevented her from working for per-session pay. (Defs.' Fact Statement ¶¶ 137, 139.)

During the 2013-2014 school year, Kunik was not chosen for a professional development seminar. (Defs.' Fact Statement. ¶ 119.) During the 2013-2014 school year, Defendant

---

[3] Because I dismissed Plaintiff's claims prior to December 18, 2012, as time-barred, I only consider Plaintiff's allegations after that time. (*See* Doc. 34).

[4] "Ernst Decl." refers to the Declaration of Leo T. Ernst in Support of Defendants' motion for summary judgment and its supporting exhibits (Doc. 36).

3

Houlihan observed Kunik on six occasions. (Defs.' Fact Statement ¶ 75.) In connection with these observations, Kunik filed at least five APPR requests[5] that claimed that the observation reports were not accurate, but Defendant Houlihan refused to accept Kunik's arguments, nor did she adjust the ratings. (Am. Compl. ¶ 50; Defs.' Fact Statement ¶ 72.)

In September 2014, Defendant Houlihan gave permission to Kunik to provide Houlihan with "artifacts"—additional information about observations—that were originally due in April, by October 1, 2014. (Defs.' Fact Statement ¶¶ 133-136; Pl.'s Fact Statement ¶¶ 166-169.) However, during the few days in which Kunik had to submit the artifacts, two of the days fell on Rosh-ha-Shana, the Jewish New Year, and the day after Rosh-ha-Shana was the Sabbath. (Pl.'s Fact Statement ¶ 167.) Therefore, Kunik could not submit the artifacts on those days, and she asked Defendant Houlihan for an extension based on Kunik's religious observances. (*Id.* ¶ 167-168) On September 28, Houlihan reiterated that the artifacts were due on October 1. (Defs.' Fact Statement ¶¶ 133-136; Pl.'s Fact Statement ¶¶ 166-169.)

Throughout the 2013-2014 school year, Kunik alleges that other teachers in the ESL Department were given better schedules than she was given. (Defs.' Fact Statement ¶¶ 105.) Specifically, Kunik was assigned five advanced preparation classes, which required more work than basic or intermediate preparation classes, while other younger and non-Jewish teachers in the ESL Department received either fewer advanced preparation classes or basic and intermediate preparation classes. (Am. Compl. ¶ 46.)

Kunik resigned from her post on December 9, 2014. (Defs.' Fact Statement ¶ 4.) Because she resigned in her twenty-first year of tenured employment, Kunik lost certain benefits

---

[5] "APPR request" is not defined in the amended complaint; however, based upon the context I believe it refers to an APPR Resolution Assistance Request, a form used by a teacher if she is "concerned about possible procedural violations related to any part of [her] Annual Professional Performance Review." *See United Federation of Teachers*, http://www.uft.org/teaching/concerns-about-evaluation-system-or-your-rating (last visited Dec. 2, 2019).

that she would have received had she completed an additional year. (Am. Compl. ¶ 54.) She also lost the opportunity to contribute additional funds to her annuity account. (*Id.* ¶ 56.) During her final years at FHHS, Kunik suffered from high blood pressure, a recurrence of her ulcer, bowel problems, a thyroid malfunction, and emotional distress—injuries that she attributes to the treatment she was subjected to by Defendants. (Pl.'s Fact Statement ¶¶ 171-175.)

## II. Procedural History

Plaintiff initiated this action by filing a complaint on December 18, 2015. (Doc. 5.) After a number of issues arose with Plaintiff's service of the complaint, the parties appeared before me on July 13, 2016, to discuss the matter. (*See* Docs. 7, 10, 12, 14, 19, 21.) By order dated July 14, 2016, I granted Plaintiff an extension of time to effectuate proper service on all Defendants, and the parties were directed to meet and confer on or before September 12, 2016, regarding purported deficiencies in the complaint. (Doc. 21.) I also directed the parties to submit a proposed briefing schedule if Defendants intended to file a motion to dismiss. (*Id.*) Pursuant to that order, the parties notified me that Plaintiff would file an amended complaint and advised me of their agreed upon schedule for the filing of Defendants' motion to dismiss. (*See* Doc. 24.) On September 12, 2016, Plaintiff filed her Verified Amended Complaint ("Amended Complaint"). (Doc. 23.) Defendants filed their motion to dismiss and memorandum of law on November 10, 2016, (Docs. 30–31), Plaintiff filed her opposition papers on December 12, 2016, (Doc. 32), and Defendants filed their reply on December 23, 2016, (Doc. 33).

On September 27, 2017, I issued a Memorandum & Opinion on Defendants' motion to dismiss. (Doc. 34). I dismissed Plaintiff's retaliation, hostile work environment, constructive discharge, procedural due process, and municipal liability claims pursuant to § 1983. I also dismissed Plaintiff's claims pursuant to the NYSHRL and the NYCHRL as time-barred.

5

Furthermore, I dismissed Plaintiff's claims to the extent they accrued prior to December 18, 2012, as time-barred. (Doc. 34 at 9). I held that these incidents were primarily a series of discrete events which did not constitute a continuing violation, and were, therefore, barred from consideration by this court. (*Id.*) Plaintiff's claims for religious and age discrimination pursuant to § 1983 after December 18, 2012, were not dismissed.

On October 23, 2017, I entered a Case Management Plan. (Doc. 37). On June 4, 2018, I referred the case to Magistrate Judge Henry B. Pitman for general pre-trial matters, including scheduling, discovery, non-dispositive pre-trial motions, and settlement.[6] On December 12, 2018, Defendants submitted a letter informing me of their intent to move for summary judgment, and setting a briefing schedule, which I adopted on December 14, 2019. (Doc. 59). Defendants filed their motion for summary judgment on January 18, 2019, (Doc. 62), along with a memorandum of law, (Doc. 64), a Statement of Undisputed Material Facts pursuant to Local Rule 56.1, (Doc. 67), and a Declaration of Leo T. Ernst in support with exhibits, (Doc. 63). On February 1, 2019, Plaintiff sought an extension of time to file her opposition to Defendants' motion, which I granted. (Doc. 66). In opposition to the motion, Plaintiff submitted a memorandum of law with responses to Defendants' Statement of Undisputed Facts, a Supplemental Plaintiff's Counter Statement of Undisputed Facts, (Docs. 69, 69-1, 69-2), and a Declaration of Steven I. Lewbel with exhibits (Doc. 68). Defendants filed a memorandum of law in reply on April 2, 2019. (Doc. 71)

### III. Legal Standard

Summary judgment is appropriate when "the parties' submissions show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

---

[6] On October 3, 2019, the case was reassigned to Magistrate Judge Sarah L. Cave.

law." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002); *see* Fed. R. Civ. P. 56(a). "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

On a motion for summary judgment, the moving party bears the initial burden of establishing that no genuine factual dispute exists, and, if satisfied, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial," *id.* at 256, and to present such evidence that would allow a jury to find in his favor, *see Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). As such, Local Civil Rule 56.1 requires a party opposing a motion for summary judgment to include in its response a statement containing "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party" followed by citation to admissible evidence. Local Civil Rule 56.1(b), (d).

In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for

purposes of the motion" or "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3); Local Civil Rule 56.1(c). When a party fails to file a counter statement under Local Civil Rule 56.1, I have discretion to accept the uncontroverted assertions of the party moving for summary judgment as true, but I "may [also] in [my] discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file such a statement." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (quoting *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000)).

## IV. Discussion

Defendants' first argument in support of summary judgment—that Plaintiff has failed to properly allege an age discrimination claim in the complaint—is without merit. While acknowledging that in my decision on Defendants' motion to dismiss I found that Plaintiff "'br[ought], as part of her first cause of action, a claim for age discrimination in violation of the Equal Protection Clause pursuant to § 1983,'" Defendants state they "respectfully disagree." (Defs.' Mem. 5–6). It appears that Defendants are asking me to reconsider my prior ruling. The time for filing a motion for reconsideration has long since passed. In any event, as noted in my decision, Plaintiff has sufficiently alleged an age discrimination claim under §1983, (Doc. 34, at 20), and Defendants have not made a compelling argument for and I see no reason to revisit that decision. Therefore, I need not address further Defendants' arguments to dismiss the action for failure to state a claim for age discrimination.

Defendant next argues that in the absence of an ADEA claim, Plaintiff's age discrimination claim under § 1983 fails. As I stated in my decision on Defendants' motion to dismiss, (Doc. 34, at 20), and as Defendants acknowledge, (Defs.' Mem. 7), it is an open

8

question in this Circuit whether age discrimination is an appropriate basis for a § 1983 cause of action, especially in the absence of an ADEA cause of action, *see, e.g.*, *Piccone v. Town of Webster*, 511 F. App'x 63, 63 n.1 (2d Cir. 2013) (summary order) ("It is an open question in our circuit whether the ADEA preempts age discrimination claims under Section 1983."); *Shein v. New York City Dep't of Educ.*, No. 15CV4236 (DLC), 2016 WL 676458, at *6 n.3 (collecting cases). However, I need not attempt to resolve this legal issue because, as I explain below, Plaintiff has failed to make out a *prima* facie case of age or religious discrimination on her § 1983 claims. For the same reason, I also need not address Defendants' qualified immunity defense.

The basic facts of the case are not disputed by the parties. What is disputed is whether the facts support Plaintiff's claims for age and religious discrimination. I find that they do not.

### A. *Applicable Law*

In order to establish a § 1983 claim for age or religious discrimination, a plaintiff must demonstrate that (1) the defendant acted unlawfully under color of state law; and (2) the plaintiff suffered a denial of her federal constitutional or statutory rights as a result of defendant's unlawful action. *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). In order to survive a motion for summary judgment on a discrimination claim brought pursuant to § 1983, a plaintiff must satisfy the three-part burden-shifting analysis articulated by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). As delineated by the Second Circuit in *Mario v. P & C Food Markets, Inc.*, 313 F.3d 758, 767 (2002), that three-part burden shifting analysis requires that:

> [A] plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class; (2) he is competent to perform the job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances

giving rise to an inference of discrimination based on his membership in the protected class. If the plaintiff succeeds, a presumption of discrimination arises and the burden shifts to the defendant to proffer some legitimate, nondiscriminatory reason for the adverse decision or action. If the defendant proffers such a reason, the presumption of discrimination created by the prima facie case drops out of the analysis, and the defendant will be entitled to summary judgment unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination. The plaintiff must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons but were a pretext for discrimination.

*Id.* (citations, quotations marks, and alterations omitted).

### B. *Application*

#### 1. Member of a Protected Class

The record establishes that Plaintiff is a member of a protected class, as the parties stipulate that she is a 69-year-old Jewish female, satisfying the first prong of the analysis for both age and religious discrimination. (Defs.' Fact Statement ¶ 1).

#### 2. Qualified to Perform the Job

The record also establishes that Plaintiff was qualified for the job she was performing. In *Slattery v. Swiss Reinsurance America Corp.*, the court explained that to satisfy the second prong of the *McDonnell* analysis "all that is required is that the plaintiff establish basic eligibility for the position at issue, and not the greater showing that he satisfies the employer." 248 F.3d 87, 92 (2d Cir. 2001). In *Slattery*, the Second Circuit found that the District Court erred in determining that because Defendant was dissatisfied with Plaintiff's performance that Plaintiff had not established the second element of a prima facie claim. *Id.* Instead, the court affirmed the holding in *Owens v. New York City Housing Authority*, in which the court held that all plaintiff must show is that she "possesses the basic skills necessary for performance of [the] job." 934 F.2d 405, 406 (2d Cir. 1991).[7] As in *Slattery*, although Defendants did put in evidence of

---

[7] In light of the holdings in *Owens* and *Slattery*, I do not adopt the contrary opinion articulated in *Thornley v.*

10

dissatisfaction with Plaintiff's performance, there is no basis for me to conclude that Kunik lacked the basic skills necessary to perform the job she had been performing for 20 years.[8]

### 3. Adverse Employment Action

Plaintiff's claim, however, fails on the third prong of the *McDonnell* test as she did not put in sufficient evidence to create an issue of fact that she was subject to an adverse employment action. For this third prong, "a plaintiff sustains an adverse employment action if he or she endures a materially adverse change in the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). "An adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* (citation omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." *Id.* (citation omitted). The Second Circuit has held that "the assignment of 'a disproportionately heavy workload' can constitute an adverse employment action." *Id.* (quoting *Feingold v. New York*, 366 F.3d 138, 152–53 (2d Cir. 2004)).

Plaintiff claims that she experienced an adverse employment action by an increase in her course load, including an English literature course she claims she was unqualified to teach, the inability to teach summer school, and the inability to submit "artifacts" to combat her unsatisfactory rating after their submission date. I will take each of these claims in turn.

---

*Penton-Publ'g*, 104 F.3d 26, 29 (2d. Cir. 1997), *abrogated by Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 92 (2d Cir. 2001).

[8] I note that Plaintiff was not fired, and although she received unsatisfactory performance reviews, she received grades of "effective" in many categories and "developing" in others in the lessons observed during the 2013-2014 school year. (Defs.' Fact Statement ¶¶ 77-88.)

First, Plaintiff's argument that her increased course load is an adverse employment action fails because "[s]cheduling and assignment issues involving course loads are generally not considered materially adverse employment actions." *Dimitracopoulos v. City of New York*, 26 F. Supp. 3d 200, 213 (E.D.N.Y 2014) (citing *Aspilaire v. Wyeth Pharms., Inc.*, 612 F. Supp 2d 289, 304 (S.D.N.Y 2009)); *see Smalls v. Allstate Ins. Co.*, 396 F. Supp. 2d 364, 371 (S.D.N.Y. 2005) ("receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions").  However, if the change is "so burdensome as to constitute a departure from normal academic practice" it may be actionable. *Dimitracopoulos*, 26 F. Supp. 3d at 213. Plaintiff fails to cite evidence in the record to establish, or create an issue of fact, that her workload was so burdensome as to constitute a departure from normal academic practice. Plaintiff's course load was also not greater than that of her peers. (Doc. 63-2 Ernst Decl. Ex. B at 88:21-89:8, Doc. 68-16 Lewbel Decl. Ex. M-2.) Plaintiff taught five classes, as did every other full-time teacher. (*Id.*) The fact that Plaintiff's classes included Regents classes is not a departure from normal academic practice, is consistent with her level of experience, and is not actionable.

Second, Plaintiff's assignment to teach some English courses in addition to English as a Second Language is also not an adverse employment action. "In order to constitute an adverse employment action, it is not enough that defendants[] gave plaintiff a subjectively less preferred teaching assignment; the assignment must be 'materially less prestigious, materially less suited to h[er] skills and expertise, or materially less conducive to career advancement.'" *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 255 (E.D.N.Y. 2012) (quoting *Galabya*, 202 F.3d at 641). Although it is clear that Plaintiff did not want to teach English, the assignment itself does not constitute an adverse employment action. Teaching English is not materially less

prestigious, nor was it materially less suited to Plaintiff's expertise as Plaintiff was licensed to teach English in the City of New York. (Lewbel Decl. Ex. M-1.) Although Plaintiff maintains that she "was not qualified to teach the English subject because [she] had not completed the required probation to teach English in the New York City Public Schools," she has not produced evidence of that beyond her self-serving deposition testimony, (Pl. Opp. 17),[9] or explained how this fact made her unqualified to teach English.[10] Plaintiff has, however, produced a letter she wrote to Defendant Houlihan which states that despite her objections she was willing to try teaching the English class, and apologized for her behavior in objecting to the assignment. (Ernst Decl. Ex. H, "I want to apologize for leaving your office earlier today in such an emotional way. I am sorry about it. . . . My husband and I discussed the situation with my schedule, and because the proof of the pudding is in the eating, we decided that I should try to do it."). In this letter Plaintiff does not mention that she believed she was not qualified to teach English and does not mention probation, instead she states her view that the decision to have her teach English was "unfair" and suggests that a less qualified/strong teacher than herself should teach English. Specifically, Plaintiff states in the letter that

> This does not change my opinion that your decision was unfair to me. Ms. lzzo and Ms. Fuentes have never and will never act in the interests of children. Neither are they people to trust or rely on, as you are still to discover for yourself. I am writing to you about it because Indians say, "Ask the oldest woman. She is not afraid to speak the truth." As a result, this decision dictated to you by these two individuals was also incorrect strategically because ESL students need *a stronger teacher* than students from the mainstream who, at least, have the ability to express themselves, whereas it presents the greatest problem for ESL students. Thus, for many of those ESL students I am a real chance to jump over the block that ELA Regents is to

---

[9] "Pl. Opp." refers to the Memorandum of Law of Plaintiff Rimma Kunik in Opposition to the Motion for Summary Judgment of Defendants New York City Department of Education, Principal Kaye Houlihan and Assistant Principal Dorish Munoz Fuentes. (Doc. 69).

[10] Moreover, Plaintiff does not explain what the requirement of probation to teach English in the New York City Public Schools actually means or how her failure to have completed probation meant that she was not qualified.

13

them.  (*Id*. (emphasis added).)

In the face of contemporaneous evidence in Plaintiff's own words, her self-serving comments from her deposition after the filing of this lawsuit cannot create an issue of fact concerning whether or not she was subjected to an adverse employment action.  *See Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d. Cir. 2005) (finding that "the District Court did not err in granting defendants' motion for summary judgment on the basis that Jeffreys's [deposition] testimony—which was largely unsubstantiated by any other direct evidence—was 'so replete with inconsistencies and improbabilities' that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint"); *Khudan v. Lee*, No. 12-cv-8147 (RJS), 2016 WL 4735364, at *5 (S.D.N.Y. Sept. 8, 2016) (finding that "Plaintiff's 'self-serving' and 'incomplete' testimony . . . is insufficient to create a *genuine* dispute of fact"); *see also Johnson v. MetLife Bank, N.A.*, 883 F. Supp. 2d 542, 550-51 (3d Cir. 2012) (acknowledging the precedent that conclusory, self-serving deposition testimony is insufficient to withstand a motion for summary judgment, but noting that the court must assess whether the testimony, when juxtaposed with the other evidence, is sufficient for a rational factfinder to credit the deposition testimony, despite its self-serving nature); *but see Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013) (finding that "[d]eposition testimony, affidavits, responses to interrogatories, and other written statements by their nature are self-serving" and that the self-serving nature "must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment.").  Plaintiff also maintains that she was the only ESL teacher asked to teach English, yet she has no knowledge concerning whether any other ESL teacher had a license to teach English in New York City.

Third, Plaintiff argues that receiving unsatisfactory ratings precluded her from teaching

14

summer school and per session programs, and that she was not invited to a teaching workshop. These arguments are specious. Plaintiff admits that over her twenty-year career she only taught summer school at most three times before the summer of 2013. (Lewbel Decl. Ex. B at 52-53). According to DOE's pay roll records Plaintiff had only taught summer school once since 2001. (Ernst Decl. Ex. GG ¶ 7). Moreover, Plaintiff was not even eligible to teach summer school by the time she received her unsatisfactory rating since the deadline to apply to teach summer school was two months before she received her unsatisfactory rating. (Ernst Decl. Ex. GG ¶ 12). In any event, Plaintiff's failure to apply for summer school belies her contention that she was precluded from doing so due to her unsatisfactory rating.

Regarding the workshop, Kunik admits that she did not apply or request to attend the workshop, that she was not aware of its existence until after it was complete, and that she did not lose salary or benefits from not attending. (Defs.' Fact Statement ¶¶ 120-122). Plaintiff also does not deny that one of the attendees of the workshop was between the ages of 55-60, which contradicts her claim for age discrimination. (*Id.* ¶ 124). This does not constitute "a material loss of benefits." *Vega*, 801 F.3d at 85.

Finally, Kunik argues that she suffered an adverse employment action when Houlihan only gave her a short extension to submit "artifacts" objecting to her unsatisfactory rating while Kunik was observing the Jewish High Holidays and the Sabbath. This argument falls short as well. First, the artifacts were supposed to be submitted in April, and Kunik admits that she had them ready to submit, and even went to Ms. Houlihan's office to submit them in April, only to find the Principal's office empty and the Assistant Principal's office locked. Defs.' Fact Statement ¶¶ 127-129). Second, although Kunik was notified of her extension by email on days during which she could not check her email for religious reasons, on September 29, 2014, after

15

the High Holidays and sabbath concluded, Houlihan agreed to accept the artifacts on October 1, 2014. (*Id*. at ¶¶ 133-137). This gave Kunik additional time to submit the same artifacts that she was prepared to submit in April. This does not constitute an adverse employment action.

### 4. Inference of Discrimination

Even if Plaintiff had suffered an adverse employment action, she failed to demonstrate that Defendants harbored any bias, or that their actions were in any way related to such bias so as to establish an issue of fact. For the fourth element, an inference of discriminatory intent "can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of New York*, 795 F.3d 297,312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

In assessing the probative value of discriminatory remarks in a § 1983 analysis, the Second Circuit explains that "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115–16 (2d Cir. 2007). In addition "[t]he relevance of discrimination-related remarks does not depend on their offensiveness, but rather on their tendency to show that the decision-maker was motivated by assumptions or attitudes relating to the protected class." *Id.*

Here, Plaintiff fails to identify any evidence of remarks made in ethnically degrading terms, negative comments about others in her protected classes, or any evidence to show discriminatory intent or disparate treatment based on her age or religion. Plaintiff's amended

16

complaint alleges that she was spoken to in antisemitic tones and that Defendants' demeanor showed discrimination. These allegations, however, are conclusory, and not borne out by the statements or behaviors identified by Kunik.

In fact, Plaintiff concedes that no one, including Houlihan and Fuentes, ever made any comments about her age or religion. (Defs.' Fact Statement ¶ 89). Plaintiff's only support for her claim is her own perception of the manner in which Defendants spoke to her. In her deposition Plaintiff explains that Houlihan "displayed a very hateful attitude towards [Plaintiff] with her eyes" and that "anti-Semitism lives in people and finds a way out." (Pl.'s Fact Statement ¶¶ 90-91). Furthermore, Plaintiff concluded that Fuentes was antisemitic because "there was no reason for her to treat me the way she was treating me," and because Fuentes allegedly lied about her, and "historically anti-Semitism strives on lies." (Defs.' Fact Statement ¶¶ 92-93). Nothing about Houlihan's or Fuentes's remarks were discriminatory, nor did they evince a discriminatory attitude towards a certain class. *See Hong Lui v. Queens Library Found., Inc.*, Civil Action No. 14-7311, 2017 WL 4217121, at *9 (E.D.N.Y. Sept. 20, 2017) (finding that Plaintiff's "subjective interpretation" of Defendant's comment is insufficient "to support that this comment was directed at her race/national origin" (citing *Haynes v. Capital One Bank*, No. 14–CV–6551 (CBA), 2015 WL 2213726, *2 (E.D.N.Y. May 8, 2015) (ambiguous remark insufficient to support inference of discrimination)).; *see also O'Neill-Marino v. Omni Hotels Mgmt. Corp.*, No. 99 Civ. 3793, 2001 WL 210360, at *7 (S.D.N.Y. Mar. 2, 2001) (holding that plaintiff's "attempts to cast a sinister light" on Defendants' comments by "pull[ing] out several soundbytes to suit her purposes, when those statements are viewed in context, one cannot reasonably conclude" that defendant was attempting to discriminate was insufficient for a discrimination claim).

Plaintiff also fails to put forward evidence to establish an inference of discriminatory intent by showing disparate treatment. To establish an inference if discriminatory intent through disparate treatment, a plaintiff must allege that "she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (quoting *Graham*, 230 F.3d at 39). "An employee is similarly situated to co-employees if they were (1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Abdul-Hakeem v. Parkinson*, 523 F. App'x 19, 21 (2d. Cir 2013) (summary order) (quoting *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010)). In *Abdul-Hakeem*, the Second Circuit affirmed the District Court's determination "that although plaintiff had 'identified seven alleged comparators,'" she provided "no factual support that a single alleged comparator performed similar job functions, was subjected to the same disciplinary standards, engaged in similar conduct, or was treated more favorably [than her][sic]." *Id.* (quoting *Abdul–Hakeem v. Parkinson,* No. 3:10cv747 (JBA), 2012 WL 234003, at *5 (D. Conn. Jan. 25, 2012)).

Plaintiff has not provided sufficient evidence to show that the comparators were similarly situated in all material respects, subject to the same evaluation and disciplinary standards, and engaged in comparable conduct. Instead, Plaintiff merely asserts that comparators did not have the same class load as she did, were not the same age as she was, and received different evaluation grades. For example, Plaintiff writes that "Argyri Apostolou's teaching schedule . . . did not include teaching four periods of Transitional ESL classes and one period Regents preparation class," (Pl.'s Fact Statement ¶ 35), or "Maria Jimenez's teaching schedule . . . did not include teaching any English (hereinafter "ELA") classes," (*Id.* ¶ 38).

This information, gathered from Defendants' responses to Plaintiff's requests to admit,

18

does not give a full picture of each comparator's qualifications, or workload, and are insufficient to show that the comparators were similarly situated in all material respects. First, the evidence provided does not demonstrate the comparators' qualifications, including whether they were licensed to teach English. Second, it does not provide the complete schedules and workloads for the comparators. Without knowing each comparator's qualifications to teach the courses, or the teaching schedules for the semesters at issue, I cannot conclude that the comparators were similarly situated to Plaintiff. In addition, Plaintiff has failed to show that even if the comparators were similarly situated, that they engaged in comparable conduct, but were treated in a disparate way. As such, Plaintiff has failed to show an inference of discriminatory intent by Defendants' by use of comparators.

## V. Conclusion

For the reasons stated above, it is hereby ordered that Defendants' motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion (Doc. 62), and close this case.

SO ORDERED.

Dated: January 29, 2020
    New York, New York

_Vernon Broderick_
Vernon S. Broderick
United States District Judge